[Cite as *State ex rel. Johnson v. OSU Cancer Research Hosp.*, 2015-Ohio-3249.]
IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Eleanorene Johnson, | : | |
| Relator, | : | |
| v. | : | No. 14AP-430 |
| OSU Cancer Research Hospital and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on August 13, 2015

*Michael J. Muldoon,* for relator.

*Dinsmore & Shohl, LLP, Christen S. Hignett* and *Michael L. Squillace,* for respondent OSU Cancer Research Hospital.

*Michael DeWine*, Attorney General, and *John R. Smart,* for respondent Industrial Commission of Ohio.

ON OBJECTIONS TO THE MAGISTRATE'S DECISION

HORTON, J.

{¶ 1} Relator, Eleanorene Johnson, brings this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order exercising its continuing jurisdiction, and to order the commission to reinstate the order of its staff hearing officer ("SHO").

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate, who has now rendered a decision and recommendation that includes findings of fact and conclusions of law and is appended to this decision. The magistrate concluded that the commission did not abuse its discretion in exercising its continuing jurisdiction and thereby vacating the SHO's order.

Respondent, OSU Cancer Research Hospital ("OSU"), relator's employer, has filed the following objection to the magistrate's decision:

> RESPONDENT, THE OHIO STATE UNIVERSITY CANCER RESEARCH HOSPITAL, OBJECTS TO THE FINDING OF THE MAGISTRATE THAT RELATOR DOES NOT HAVE AN ADEQUATE REMEDY AT LAW.

{¶ 3} Relator has also filed an objection to the magistrate's decision. However, for the reasons which follow, we sustain OSU's objection, thereby rendering relator's objection moot.

{¶ 4} As reflected in the facts given in the magistrate's decision, relator suffered an industrial injury in 2010 and her claim was allowed for the following physical condition: sprain lumbosacral. On August 23, 2013, relator filed a C-86 motion requesting that her claim be additionally allowed for the following psychological condition: major depression, single episode, non-psychotic, severe. A district hearing officer disallowed relator's request. The matter came before the SHO on October 18, 2013. The SHO granted relator's request and additionally allowed her claim to include the requested psychological condition. OSU attempted to appeal the SHO's order, but the commission refused the appeal.

{¶ 5} OSU then filed a request for reconsideration with the commission. On January 9, 2014, the commission issued an order vacating the SHO's order and setting the matter for a hearing. The commission concluded that the SHO's order contained a clear mistake of law, as it failed to find that the requested psychological condition was causally related to the allowed physical condition. The commission accordingly granted OSU's request for reconsideration, and denied relator's request for the additional allowance.

{¶ 6} The magistrate determined that the commission did not abuse its discretion by exercising its continuing jurisdiction, as the SHO's order contained a clear mistake of law. As such, the magistrate recommended that we deny relator's request for a writ of mandamus.

{¶ 7} The magistrate also addressed OSU's contention that the instant action was a right to participate case and appealable to the court of common pleas. The magistrate concluded that the commission's decision to exercise its continuing jurisdiction was reviewable in mandamus, as it could not be challenged elsewhere.

{¶ 8}   Pursuant to Civ.R. 53(D)(4)(d), we undertake an independent review of the objected matters "to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law."  A relator seeking a writ of mandamus must establish: " '(1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' "  *Kinsey v. Bd. of Trustees of the Police and Firemen's Disability and Pension Fund of Ohio*, 49 Ohio St.3d 224, 225 (1990), quoting *State ex rel. Consol. Rail Corp. v. Gorman*, 70 Ohio St.2d 274, 275 (1982).  "A clear legal right exists where the [commission] abuses its discretion by entering an order which is not supported by 'some evidence.' " *Id.*

{¶ 9}   OSU asserts that relator has an adequate remedy in the ordinary course of the law pursuant to R.C. 4123.512. R.C. 4123.512(A) states, in relevant part, that "[t]he claimant or the employer may appeal an order of the industrial commission * * * in any injury or occupational disease case, other than a decision as to the extent of disability to the court of common pleas." Thus, "[u]nder R.C. 4123.512, claimants and employers can appeal Industrial Commission orders to a common pleas court only when the order grants or denies the claimant's right to participate" in the workers' compensation fund. *State ex rel. Liposchak v. Indus. Comm.*, 90 Ohio St.3d 276, 278 (2000). "Determinations as to the extent of a claimant's disability, on the other hand, are not appealable and must be challenged in mandamus." *Id.* at 278-79.

{¶ 10} Thus, the issue before this court resolves to whether the commission's decision to exercise its continuing jurisdiction amounted to a decision determining relator's right to participate in the workers' compensation system. Pursuant to the Supreme Court of Ohio's recent decision in *State ex rel. Alhamarshah v. Indus. Comm.*, 142 Ohio St.3d 524, 2015-Ohio-1357, we find that it was.

{¶ 11} In *Alhamarshah,* the claimant filed an application for workers' compensation benefits, and the Bureau of Workers' Compensation allowed the claim. The employer then faxed some documents to the bureau, which a bureau employee construed as a notice of appeal. The commission accepted the appeal, and a hearing officer disallowed the claim. The claimant then filed a complaint for a writ of mandamus in the court of appeals, asserting that the commission abused its discretion by determining that the faxed documents amounted to a notice of appeal.

{¶ 12} The commission's determination that the faxed documents complied with the statutory requirements for a notice of appeal was a decision which "conferred jurisdiction on the commission to proceed to consider the merits of the purported employer's appeal." *Id.* at ¶ 12. As the "commission's exercise of jurisdiction resulted in a decision denying the claimant's right to participate in the workers' compensation system," the Supreme Court held that the "decision allowing the appeal to proceed was essential to the ultimate determination that denied the claimant's participation in the workers' compensation system." *Id.* at ¶ 12. As such, the court found that "the commission's decision to accept the appeal as valid was appealable pursuant to R.C. 4123.512," and the claimant thus "had an adequate remedy in the ordinary course of law by way of an appeal under R.C. 4123.512." *Id.* at ¶ 12-13.

{¶ 13} The commission's decision here to exercise its continuing jurisdiction resulted in a decision which denied relator the right to participate in the workers' compensation system. The commission's decision was thus "essential to the ultimate determination that denied the claimant's participation in the workers' compensation system." *Id.* at ¶ 12. Accordingly, the commission's decision to exercise its continuing jurisdiction was appealable to the court of common pleas pursuant to R.C. 4123.512.

{¶ 14} Following our own independent review, and for the reasons set forth in this decision, we sustain OSU's objection to the magistrate's decision, overrule relator's objection as moot, and reject the magistrate's conclusions of law. Because relator has an adequate remedy at law, mandamus relief is inappropriate. As such, we deny the request for a writ of mandamus.

*OSU's objection sustained;*
*relator's objections rendered as moot; writ denied.*

BROWN, P.J. and BRUNNER, J., concur.

_____

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Eleanorene Johnson, | : | |
| Relator, | : | |
| v. | : | No. 14AP-430 |
| OSU Cancer Research Hospital and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on April 22, 2015

*Michael J. Muldoon,* for relator.

*Dinsmore & Shohl, LLP, Christen S. Hignett* and *Michael L. Squillace,* for respondent OSU Cancer Research Hospital.

*Michael DeWine*, Attorney General, and *John R. Smart,* for respondent Industrial Commission of Ohio.

### IN MANDAMUS

{¶ 15} Relator, Eleanorene Johnson, has filed this original action requesting that this court find that the Industrial Commission of Ohio ("commission") abused its discretion when it exercised its continuing jurisdiction over her application to have her claim additionally allowed for a psychological condition and ordering the commission to vacate its order on grounds that the commission did not have jurisdiction, and further ordering the commission to reinstate the order of its staff hearing officer ("SHO")

granting her the right to participate in the workers' compensation system for an allowed psychological condition.

Findings of Fact:

{¶ 16} 1. Relator sustained a work-related injury to her low back on August 19, 2010 while working for respondent OSU Cancer Research Hospital ("OSU").

{¶ 17} 2. Relator's workers' compensation claim has been allowed for the following physical condition: "sprain lumbosacral."

{¶ 18} 3. Relator's claim has been specifically disallowed for the following additional back conditions:

> Disc protrusion L5-S1; substantial aggravation of pre-existing L5-S1 disc herniation.

{¶ 19} 4. On April 23, 2013, relator filed a C-86 motion asking that her claim be additionally allowed for the following psychological condition: "major depression, single episode, non-psychotic, severe."

{¶ 20} 5. In support of her motion, relator submitted the April 1, 2013 report of Michael Glenn Drown, Ph.D. In his report, Dr. Drown noted relator's complaints:

> Chronic Pain; Dysphoric Mood; Anhedonia (inability to experience joy); Sadness; Sleep Impairment; Loss of Motivation; Despair; Hopelessness; Irritability; Chronic Frustration.
>
> Ms. Johnson elaborated that prior to her work injury she was a happy and able bodied person. She described herself as a hard worker. She played with her grandchildren. She enjoyed going out with friends. She had a boyfriend. She had no problems getting up and down. She road her bike. She was able to do her own household chores. She walked a lot and enjoyed taking a bath. She was hopeful regarding her future. She felt good about herself. She was content in life and had self-confidence. Her self-image was that of a strong individual capable of forging her way through life in a meaningful and productive way both for the benefit of her family and the community at large.
>
> Following her work injury[,] Ms. Johnson has become restricted in many aspects of ordinary living. She struggles with problems of pain. She explained that she lost her job because of her injury. She is sad and cries all the time. She is unable to sit or stand for any length of time. She can no longer play with her grandchildren like she used to because

of pain. She can not ride her bike. Her daughter must do the chores for her. She lost her boyfriend because pain keeps her from having sex.

Ms. Johnson worries about aggravating her injury. She would like additional help for learning how to better manage her pain, worries and depressive feelings. Learning to better manage these specific problems is paramount to her learning to rebuild her life in general. She fears that without proper treatment she will become more and more depressed.

* * *

Ms. Johnson is presently unemployed. She worked twenty-one years for OSU as a housekeeper. She seeks to re-establish herself as a happy and secure worker gainfully employed. She seeks to better adapt to these problems.

Under additional major life stressors, Dr. Drown noted:

The most significant stressor impinging on Ms. Johnson is her work injury, including the loss of functioning, pain, associated problems of worries and fears and the deflected self-esteem.

Ms. Johnson is being treated for hypertension. She has issues with her thyroid and with seizures. She evidently had adjusted well to the usual medical illness of childhood including measles and chickenpox. She has reportedly been able to adjust through period[s] of time when she has the common cold and flu; this may happen on a seasonal basis. However, the medical issues that wear on her unceasingly are those which are work related and cause her unrelenting physical pain.

Ms. Johnson reported no history of either drug or alcohol abuse. She reports no criminal history. There is no prior psychiatric treatment.

{¶ 21} Dr. Drown administered the BDI-II test and indicated that relator fell under the category of severe depression. The ISB test revealed that relator was generally maladaptive regarding her mood, anxiety, pain and self-image. The MMPI-2 test was administered and, in discussing the results, Dr. Drown concluded that the proper interpretation of relator's profile was for a "cry for help." Dr. Drown recommended the following:

Based [on] this most recent interview and psychometric test results, it can be said that Ms. Eleanorene Johnson suffers from Major Depression, Single Episode, Non-Psychotic, Severe. It is within reasonable certainty that this psychiatric disorder is directly related to her industrial injury as referenced on page one of this report.

It is highly recommended that Ms. Johnson be permitted to receive antidepressant medication; certain antidepressant medications such as selective sympathetic re-uptake inhibitors (SSRI) are well known to assist in the management of pain, mood and worry.

It is vitally important that she be allotted the opportunity to participate in at least 26 weeks of intensive cognitive and behavioral therapy that would focus on the management of mood, anxiety and physical pain. Such therapy should also address the issue of self-image reconstruction. Furthermore[,] such therapy should focus on recovery of such problems to the point of enhancing her sense of job security, and job satisfaction.

Should Ms. Johnson be granted this type of therapy, it is important that useful tracking tools be utilized in order to measure or gauge treatment outcome. At the end of this specified number of sessions, a second evaluation should be made which addresses efficacy of the treatment process.

At this point in time a recommendation should be made regarding the need and direction for continuation of such therapy. This could include the termination of psychotherapy altogether if benefit cannot be substantiated. Given her excellent work ethic and positive attitude toward mental health recovery as well as toward learning pain management, the prognosis for making significant strides through psychological counseling is optimistic. She will need treatment with a patient therapist capable of feeling compassion and creative enough to assist her in finding hope as she moves through the various struggles which she faces. Prognosis under such conditions is good for moving through the grieving process and onto reconstruction of her life, including vocational rehabilitation which may lead to reemployment. Should she not be permitted to engage in structured psychological counseling, her condition is likely to worsen.

{¶ 22} 6. Relator was also examined by Dr. Earl F. Greer, Jr., Ed.D. In his July 19, 2013 report, Dr. Greer ultimately concluded that she was not suffering from a major depressive disorder, but was experiencing a depressive disorder currently diagnosed as dysthymic disorder. In Dr. Greer's opinion, relator had an underlying, pre-existing personality pattern and/or emotional state which was aggravated by the August 19, 2010 work-related injury. Dr. Greer further opined that the degree of impairment appeared temporary pending the outcome of treatment with psychological/psychiatric intervention being highly recommended.

{¶ 23} 7. Relator was also examined by Richard H. Clary, M.D. In his August 23, 2013 report, Dr. Clary noted the history of relator's present illness:

> Ms. Johnson began working at OSU Medical Center in 1990. She later moved to the OSU James Cancer Hospital. She worked in the housekeeping department. She was injured on 8/19/10 when she was cleaning a patient's room. She was moving a chair and noted pain in her lower back. She went to the OSU Medical Center Emergency Room where she was treated and released.
>
> She then began follow-up care at the OSU East Occupational Medicine Clinic and treated with Dr. Smith initially, but then she began treating with a Dr. Schaub. She's had physical therapy and prescription medication. She has also had x-ray and a[n] MRI. She consulted with a pain doctor and the doctor recommended some type of injections but she said this was not approved by BWC.
>
> She now sees Dr. Schaub every 2-3 months. She takes Vicodin 5 mg. four times a day as needed for pain and she takes over the counter Tylenol. She said her lower back pain has not improved since the time of the injury.
>
> Ms. Johnson returned to work on light duty after the injury and worked for about a year. After 1 year, she said OSU told her there were no more light duty jobs available.
>
> Ms. Johnson said her attorney referred her to Psychologist Dr. Drown. We submitted a report dated 4/1/13 but he has not provided any treatment. BWC then referred her to Psychologist Dr. Greer. He submitted a report dated 7/19/13 but he has not provided any treatment.

> Ms. Johnson denies any psychiatric care or treatment before the injury of 8/19/10. She has never been hospitalized for psychiatric problems.

{¶ 24} Ultimately, Dr. Clary opined that relator had not developed the psychological disorder as a result of the August 19, 2010 injury. Instead, Dr. Clary noted that relator had suffered from seizures for the last several years and, in his opinion, tended to exaggerate her problems. Specifically finding that she did not have a psychological condition or aggravation attributable to the work-related injury, Dr. Clary stated:

> Ms. Johnson denied any past history of ever having treatment for any psychiatric or psychological problems. Her teenage years were very stressful after her mother died because she had to take care of 5 younger children and she had to deal with her father who abused alcohol and was mean and horrible to her when he was drinking. Ms. Johnson was also inconsistent in reporting her past use of marijuana.
>
> In my medical opinion, Ms. Johnson is not suffering from major depressive disorder as the result of the injury of 8/19/10. In my medical opinion, Ms. Johnson is not suffering from dysthymic disorder as the result of the injury of 8/19/10. In my medical opinion, Ms. Johnson has a tendency to exaggerate her psychiatric symptoms. During my evaluation, Ms. Johnson was exaggerating her short term memory problems. In my medical opinion, the exaggeration of memory problems correlates with the exaggeration of psychiatric symptoms.
>
> In my medical opinion, Ms. Johnson has had a seizure disorder problem for about 15 years but she has had poor control over the seizures for the last several years and she's had several seizures each year. In my medical opinion, having seizures on a yearly basis could certainly cause depression, which would be present even in the absence of her injury of 8/19/10.
>
> In my medical opinion, her injury of 8/19/10 did not aggravate a pre-existing psychiatric condition.

{¶ 25} 8. In a letter dated September 3, 2013, Dr. Drown responded to Dr. Clary's report, stating:

Problem One: Making reference to the MMPI-2 profile that I generated from my initial evaluation (4/01/13) Dr. Clary opined that Ms. Johnson was attempting to exaggerate her symptoms because in addition to the F (faking bad) score being elevated, the L (lie) score and the K (defensive) scales were very low. However Dr. Clary fails to recognize that the F scale elevation is most probably a "cry for help" indication and rises as an artifact of the genuine suffering she has expressed in the clinical scales especially that of scale 2 (depression) and scale 7 compulsivity, 3 (Hysteria), and scale 5 (Paranoia).

Additionally, the low scale of L (lie) and of K (defensive) contradict Dr. Clary's analysis that Ms. Johnson is exaggerating. Instead such low scores if anything would indicate a tendency not to over report.

Problem Two: Dr. Clary presents a list of life event stressors that Ms. Johnson has encountered and implies that the [sic] such stressors continue to be operative including the death of various family members many years ago. However[,] these are life event stressors for all people who live long enough. These matters have long been resolved. The problems that are ongoing and clearly unresolved include the ongoing work injury pain, the loss of her ability to be employed, the grief associated with the loss of functioning. Ms. Johnson's life style plans have been "blown up" because of their [sic] multiple work injuries. She had expected to work until her late sixties. Currently her status with her O.S.U. employer is involuntary retirement.

I reviewed my earlier 4/01/13 evaluation of Ms. Johnson. Indeed[,] during this evaluation she expressed herself as having ongoing problems with chronic work injury pain. This information is reflected in the various instruments that I administered to her (see attached). She explained that her pain is so overwhelming that it impairs her concentration ability as well as causes her to have much anger and frustration. Furthermore she reports having problems of low self-confidence, diminished ability to find joy and pleasure with social withdraw and isolation, feeling sad and having hopelessness. She also reports having [a] problem with managing daily stress. She is easily frustrated, irritable and stressed. She reports worrying a good deal especially about her work injury issues becoming worse across time. In addition to taking psychotropic medication she would like to have someone to talk to regarding the better management of her mood problems. There is nothing in the Dr. Clary

defense report that would change my mind in regard to his opinion. Ms. Johnson suffers from a work related affective disorder. Dr. Greer identified this disorder as, "Dysthymic Disorder." I have identified it as, "Major Depression, Single Episode, Non-Psychotic[, Severe]." I stand by the diagnosis that I have made in my 4/01/13 report. Dr. Greer's diagnosis is very close to the diagnosis that I have generated and will be adequate to help Ms. Johnson get the treatment that she desperately needs.

{¶ 26} 9. Relator's motion was heard before a DHO on September 5, 2013. The DHO relied on the report of Dr. Clary and disallowed relator's claim for the requested psychological condition.

{¶ 27} 10. Relator appealed and the matter was heard before an SHO on October 18, 2013. The SHO vacated the prior DHO order and relied on Dr. Drown's April 1, 2013 report as well as his December 3, 2013 rebuttal and granted relator's request that her claim be allowed for major depression, single episode, non-psychotic, severe.

{¶ 28} 11. OSU's appeal was refused by order of the commission mailed November 15, 2013.

{¶ 29} 12. OSU filed a request for reconsideration and in an order mailed January 9, 2014, the commission issued an interlocutory order vacating the prior SHO order and setting the matter for hearing:

It is the finding of the Industrial Commission that the Employer has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of law of such character that remedial action would clearly follow.

Specifically, it is alleged that in granting the requested additional allowance of a psychological condition, the Staff Hearing Officer erred by failing to make a finding that the psychological condition is related to the allowed condition. In addition, it is alleged that the Staff Hearing Officer erred by relying upon the reports from Michael Drown, Ph.D., who does not recognize or address the conditions previously disallowed in the claim.

{¶ 30} 13. The matter was heard before the commission on April 3, 2014. The commission granted reconsideration, stating:

[I]n granting the request to additionally allow the claim for a psychological condition, the Staff Hearing Officer failed to

find the requested condition was related to the physical injury previously recognized in the claim, as required by Armstrong v. John R. Jurgensen Co., 136 Ohio St.3d 58, 2013-Ohio-2237 * * *.

{¶ 31} 14. Thereafter, the commission denied relator's request for the additional allowance, stating:

It is the decision of the Commission to deny the Injured Worker's C-86 Motion filed 04/22/2013 [sic], requesting the additional allowance of **MAJOR DEPRESSION, SINGLE EPISODE, NON-PSYCHOTIC, SEVERE** and to specifically **DISALLOW** the claim for such condition. The Commission is not persuaded the specified psychological diagnosis is causally related to the allowed lumbosacral sprain condition allowed in the claim, a soft tissue condition now three years old, particularly when consideration is given to the L5-S1 disc conditions specifically disallowed in the claim on both a direct and substantial aggravation basis.

The Commission relies on the 08/23/2013 report from Richard Clary, M.D., a psychiatrist who examined the Injured Worker on 08/22/2013, regarding the issue of recognition of the requested additional condition. Dr. Clary concluded the Injured Worker neither suffered from the requested major depressive disorder nor any other psychiatric disorder as a result of the 08/19/2010 industrial injury. Dr. Clary further opined the industrial injury did not aggravate any pre-existing psychiatric condition. Based on Dr. Clary's persuasive report, the Commission hereby **denies** the requested **additional allowance** for the psychological condition of **MAJOR DEPRESSION, SINGLE EPISODE, NON-PSYCHOTIC, SEVERE** in the claim.

(Emphasis sic.)

{¶ 32} 15. The stipulation of evidence contains the transcript from the commission hearing. That transcript provides information concerning relator's allowed physical condition, which is pertinent. Specifically, relator's claim is solely allowed for the lumbosacral sprain, which at the time, was a two and one-half-year old soft tissue injury that had resolved. Further, relator's treating physician Dr. Schaub, opined that the allowed physical condition had reached maximum medical improvement ("MMI") in February 2011. The transcript also documents the denial of a request for an MRI in 2012, the denials of requested medications in 2012, reference to medical reports reaffirming the

resolution of the allowed condition and pointing out degenerative disc issues which are not allowed.

{¶ 33} 16. On August 14, 2014, OSU filed a motion to dismiss arguing that this is a right to participate case and relator has an adequate remedy at law pursuant to an R.C. 4123.512 appeal to the common pleas court.

{¶ 34} 17. In a magistrate's order filed October 31, 2014, the magistrate denied OSU's motion to dismiss finding this court had jurisdiction to determine whether the commission abused its discretion, as a matter of law, when the commission exercised its continuing jurisdiction.

{¶ 35} 18. The stipulation of evidence and briefs have been filed; oral argument has concluded and the case is currently before the magistrate for consideration.

Conclusions of Law:

{¶ 36} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 37} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 38} Pursuant to R.C. 4123.52, "[t]he jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-42 (1992), the court

examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:

> R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, *e.g., State ex rel. Gatlin v. Yellow Freight System, Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487 (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383 (just cause for modification of a prior order includes new and changed conditions); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149 (continuing jurisdiction exists when prior order is clearly a mistake of fact); *State ex rel. Kilgore v. Indus. Comm.* (1930), 123 Ohio St. 164, 9 Ohio Law Abs. 62, 174 N.E. 345 (commission has continuing jurisdiction in cases involving fraud); *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379 (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 86, 556 N.E.2d 168, 170 (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law.

{¶ 39} As an initial matter, OSU continues to argue that this court does not have jurisdiction to hear this mandamus action asserting that this is a right to participate case and relator has an adequate remedy at law. As OSU asserts, if this court finds the commission abused its discretion when it determined the SHO's order contained a clear mistake of law, relator's claim will be additionally allowed for a psychological condition and OSU will have to challenge that allowance in common pleas court.

{¶ 40} The commission may exercise its continuing jurisdiction for only those reasons enumerated in the statute. The commission asserts that the SHO's order contained a clear mistake of law: the SHO failed to find the requested psychological condition was related to the allowed conditions in the claim as required by *Armstrong v. Jurgensen Co.,* 136 Ohio St.3d 58, 2013-Ohio-2237. Relator asserts the commission

merely reweighed the evidence acceptable in an appeal but not acceptable under continuing jurisdiction.

{¶ 41} The magistrate finds that the commission's determination that it had continuing jurisdiction is reviewable here in mandamus as it cannot be challenged elsewhere.

{¶ 42} In this mandamus action, there are a limited number of medical records which have been filed and the medical records which have been filed all concern relator's allowed psychological condition. Missing from the stipulation of evidence are medical records documenting relator's physical condition. However, the stipulation of evidence does contain a copy of the transcript from the April 4, 2014 hearing and, after reviewing that transcript, the magistrate finds that the commission did not abuse its discretion when it exercised its continuing jurisdiction.

{¶ 43} In exercising its continuing jurisdiction, the commission cited the decision from the Supreme Court of Ohio in *Armstrong*. Although the fact pattern here is different, the law and its application are not. Shaun Armstrong was involved in a motor vehicle accident during the course of his employment. While stopped at a yield sign, Armstrong observed a vehicle approaching from behind with increasing speed. Armstrong braced for a collision, afraid he was going to be seriously injured. After the collision, Armstrong called 9-1-1, observed the other driver was not moving and suspected he was dead. Armstrong filed a workers' compensation claim, which was allowed for certain physical injuries and subsequently requested additional allowance for post-traumatic stress disorder ("PTSD"). Ultimately, because Armstrong's PTSD did not arise from his physical injuries, his request to have that condition allowed was denied.

{¶ 44} In affirming the determination that PTSD should not be allowed in Armstrong's claim, the Supreme Court stated:

> Armstrong's final argument concerns the effect of the 2006 amendment to R.C. 4123.01(C)(1), which added the following italicized language to the statute: injury does not include "[p]sychiatric conditions except where the *claimant's psychiatric* conditions have arisen from an injury or occupational disease *sustained by that claimant.*" Am.Sub.S.B. No. 7, 151 Ohio Laws, Part I, 1019, 1046. The parties agree that the purpose of the amendment was to counter the decision in [*Bailey v. Republic Engineered Steels, Inc.,* 91 Ohio St.3d 38, 39-40, 741 N.E.2d 121 (2001)]*,*

which allowed a claim for depression after the claimant accidentally killed a coworker, even though the claimant did not suffer any physical injury himself. By amending the statute, the General Assembly clarified that the claimant, not a third party, must sustain the physical injury required under R.C. 4123.01(C)(1). The amendment did not alter the statutory language regarding the necessary nexus between a physical injury and a psychiatric condition, and the sole effect of the amendment here is to preclude Armstrong from establishing the compensability of his PTSD by arguing that it arose from the other driver's injuries or death.

(Emphasis sic.) *Id.* at ¶ 25.

{¶ 45} In the present case, the issue was whether the medical evidence was sufficient to support a finding that relator's request that her claim be allowed for major depression, single episode, non-psychotic, severe, was in fact, related to the allowed physical condition in her claim, sprain lumbosacral. Relator's date of injury was August 19, 2010 and it was in 2013 that Dr. Drown opined she was suffering from a psychological condition. Dr. Drown's April 1, 2013 report, repeatedly explains that relator continues to suffer significant back pain, which is also keeping her from enjoying life or returning to work. However, a lumbosacral sprain is a soft tissue injury which would not continue causing relator problems three years post-injury. With that in mind, the magistrate notes the following from the transcript which includes reference to medical reports which are not contained in the stipulation of evidence:

The allowed physical injury in this claim is a two and a half at least, at the time the C86 was filed two and a half-year-old soft tissue injury. All of the evidence with respect to the treatment for the physical condition indicates that the sprained lumbosacral resolved.

That being the case, it cannot be said that the resolved condition directly caused the requested mental condition.

With respect to resolution of the allowed sprained lumbosacral[,] I direct your attention to a document dated February 21, 2011, wherein the physician of record Dr. Schaub in a note that's actually dated February 16, 2011, said the allowed condition to reach maximum medical improvement [sic]. Treatment requests have been denied based upon medical reports that have found the allowed condition has resolved.

I direct your attention to DHO, SHO orders denying a request for an MRI. DHO document date May 25, 2012, SHO document date July 11, 2012. Injured worker's request for an MRI was denied based upon a report by Dr. Gayton or Gaytons. And his report for your information is included in ADR documents or imaged March 30, 2012.

In that report Dr. Gayton tells us lumbar sprain is well past the injury timeline in this case and the requested treatment at that point in time[,] an MRI[,] was directed toward non-allowed conditions.

Medications have been denied under this claim. District Hearing Officer dated July 20, 2012[,] SHO dated August 30, 2012, denied medications requested by the physician of record in this claim based upon the report of Dr. Schaub, document date June 8, 2012.

And in that report Dr. Schaub tells us that the soft tissue injury has long since healed and the treatment is directed the medication at that point in time were directed toward chronic problems [sic].

In addition to that information you have subsequent notes from Dr. Schaub that I reviewed in my request for reconsideration. You also have a request for physical therapy that was denied based upon a report of Dr. Hiroba.

Dr. Hiroba noted in her report that was relied upon by the Commission to deny treatment that the injury, again, the allowed soft tissue injury is well beyond the usual nine- to ten-week timeline for sprains and strains. And that the treatment at that point in time was physical therapy was [sic] directed toward not the allowed degenerate disc disease, not the allowed sprain condition [sic].

The physician of record[,] Dr. Schaub[,] indicated in 2011[,] found that the allowed condition had reached maximum medical improvement.

More recently Dr. Schaub in a note dated August 14, 2013, said the patient is only allowed for a sprain/strain claim so I recommend she follow up with her family physician for ongoing treatment.

There is no evidence in the record from Dr. Schaub at least that indicates that it is the allowed soft tissue injury that is

the cause of the symptoms that she conveys to the treatment providers.

(Tr. 10-13.)

{¶ 46} When the SHO allowed relator's claim for a psychological condition, the SHO relied on the April 1 and September 3, 2013 reports of Dr. Drown. In his April 1, 2013 report, Dr. Drown does not list any medical records concerning relator's physical conditions which he reviewed. Further, nowhere in his report does Dr. Drown indicate that he is aware relator attempted to have her claim additionally allowed for significant back conditions, but the request was denied. As such, although he notes that her back pain is the main cause of her psychological condition, nowhere in Dr. Drown's report does he specifically indicate that the lumbosacral sprain, in and of itself, was sufficient to cause the psychological condition. It may be that relator's claim should have been allowed for additional, more serious, back conditions; however, the fact remains that it was not. Because Dr. Drown's reports do not discuss the allowed condition of lumbosacral sprain, and whether or not relator's pain was actually attributable to that allowed condition, the commission did not abuse its discretion when it exercised its continuing jurisdiction here. This is not simply a factual disagreement as relator suggests. Relator's evidence simply was not sufficient to demonstrate that the psychological condition was proximately caused by the allowed physical condition in her claim.

{¶ 47} Based on the foregoing, the magistrate finds the commission did not abuse its discretion when it exercised its continuing jurisdiction. As such, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).